COMMUNITY STORES OF LOUISIANA, Inc.,
v. ASSOCIATED INDEMNITY COR-
PORATION.

No. 1056.

Court of Appeal of Louisiana. First Circuit.

Dec. 6, 1932.

Porteous, Johnson & Humphrey, of New Orleans, for appellant.

Johnson & Kantrow, of Baton Rouge, for appellee.

LE BLANC, J.

Defendant appeals from a judgment in the district court condemning it to pay plaintiff a loss of $133.73 on a robbery insurance policy.

The policy covered the period from July 1, 1931, to July 1, 1932, and protected the plaintiff against loss by robbery on a number of retail merchandise stores; the place and location of each being specifically designated in an indorsement attached thereto. On August 14, 1931, by a subsequent indorsement annexed to the policy, which stipulates that in consideration of an added premium of $20.90, additional stores were included in the protection afforded by the policy. This indorsement also specifically designates each store by a proper location and supplements entirely the first indorsement that had been attached. Among the twenty-two stores protected according to this last indorsement, the vast majority were in the city of Baton Rouge, street

addresses being given in each instance, and among these latter was a store described as being located at 800 Main street.

The policy contains a waiver clause which reads as follows: "No condition or provision of this policy shall be waived or altered except by endorsement attached hereto, signed by the President and Secretary and countersigned by a duly authorized representative of the company; nor shall notice to any representative, nor shall knowledge possessed by any representative, or by any person, be held to effect a waiver or change in any part of this policy."

It may be pertinently remarked here that the two indorsements, before referred to as being attached to the policy, complied with the stipulations of that clause.

Plaintiff alleges in its petition that during the month of August, 1931, the date not being mentioned, it discontinued the operation of its store located at 800 Main street, and transferred the same to Plank road opposite Fairfield subdivision in the city of Baton Rouge. This allegation is contained in paragraph 5 of the petition, which is categorically denied by the defendant. The precise date of the change in location of that store is not shown. Mr. Hause, president of the plaintiff company, and the only witness, does not even refer to the alleged transfer of the store; he simply testifying to the fact that the store at 800 Main street was no longer in operation, and that he did not recall the date at which it was discontinued. Granting, however, that the change in location was made in August, 1931, as alleged, it is obvious that it was subsequent to the 14th of that month, as otherwise the new location instead of the old would have been inserted in the indorsement of that date. There was no indorsement covering the change in location of this store annexed to the policy, although plaintiff alleges that verbal notice thereof was given to the defendant's local agent, G. G. Wilkes, who on November 5, 1931, acting within the scope of his employment, acknowledged the same by letter.

On December 3, 1931, within the life of the policy, this store on Plank road was robbed and claim was promptly presented for the loss sustained, payment of which was refused. Plaintiff's contention is that the acknowledgment of the notice by defendant's agent and his promise to obtain a formal indorsement constituted a waiver of the terms of the policy as it were, and that the defendant is now estopped from denying liability for the loss. This proposition of law is disputed and denied by the defendant. It is admitted on information that the agent wrote a letter to the plaintiff, but it is also averred affirmatively that the agent had no authority to bind defendant thereby, and as a further disclaimer

of liability, the waiver clause in the policy heretofore quoted in full is especially pleaded.

█ The issue presented therefore involves a consideration of the clause concerning a change in the condition of the policy and of the limitation of the authority of the local agent of the insurance company in regard thereto.

Such clauses, although couched in different verbiage, are generally to the same effect in all insurance policies, and they have very frequently been the subject of litigation before our courts. It occurs to us, in reading the various decisions, not only of our own courts but those of the other states as well, that generally where it is held that there had been a waiver, it was because the waiver or change in condition of the policy related to matters that came up at the time of the confection of the contract, which of course was the policy itself, or that the insurance company had accepted and retained the premium paid by the insurer after having obtained knowledge of the change in condition, or because the company was found to have consented to the change in some other form than required under the terms of the policy or was held estopped from denying liability by reason of some deception or misrepresentation, either express or implied, on its part, such for instance as lulling the insured into the belief that the agent had authority to bind it. Otherwise, full effect seems to have been given to the waiver and restriction of authority clause, and the company was held to be without liability where the requirements of that clause were not complied with.

The principle that an assured is bound by such a clause which appears in and forms part of his policy is well expressed in the case of Murphy v. Royal Insurance Co., 52 La. Ann. 775, 27 So. 143, from the syllabus of which we quote: "An insurance company, like an individual, may limit the authority of its agents; and where direct notice of such limitation, or any notice which a prudent man is bound to regard, is brought home to the assured, he is bound by it, and relies upon any act in excess of such limited authority at his peril."

From the body of the decision, supporting the syllabus, we quote further: "That an agent may waive a forfeiture is well established by authorities. But where a limitation is imposed upon the power of an agent, upon the face of the policy, of which the assured, as a prudent man, ought to know, and there is no evidence that the agent has been accustomed to act in excess of such power, with the express or implied consent of the insurer, the insured is not justified in dealing with him in reference to such matters, and his acts as to the excess of authority, are not binding on the company."

In People's Bank of Donaldsonville v. National Fire Insurance Co., 130 La. 951, 58 So. 826, 827, we find a still more forcible expression which we think is especially pertinent, and which we quote:

"The cases upon which counsel for plaintiff appear to rely deal, for the most part, with questions of preliminary agreements for the issuance of policies of insurance; whilst here we are dealing with a case where the policy was issued, and plaintiff is seeking to enforce it in contravention of its terms. In some other cases, the courts seem to have gone rather far, as it seems to us, in holding (to quote from counsel's brief an excerpt from one of the cases cited) that: 'An insurance agent may orally waive conditions in the policy, though the policy requires the waiver to be indorsed thereon'—which is to say that an agent may bind his principal in a matter, or in a manner, in respect to which the authority so to bind is expressly withheld, to the knowledge of, and under a written contract with, the party with whom the agent deals.

"We have, however, not adopted that view, nor have many of the other courts of the country, and we find no sufficient reason for doing so."

In Dominick v. Detroit Fire & Marine Ins. Co., 147 La. 549, 85 So. 236, the court refused to allow plaintiff to recover on a fire insurance policy a condition of which had been violated on an oral promise of a local agent that it was "all right" and that he would "take care" of the matter.

█ In this case, too, we find plaintiff relying in some measure on verbal statements of the agent "not to be in any way uneasy about the endorsement," which, of course, under the authority just cited could be of no avail in enforcing the policy. True, plaintiff relies in greater measure on the agent's letter of November 5, 1931. But that letter, aside from acknowledging notice of the change of location of the store in question, indicates rather that the agent lacked the very authority which plaintiff would now attribute to him. In the paragraph immediately following that in which he acknowledges that he personally has been notified of the change, he states further that he has "notified the general agents of the company" and that he is now awaiting the indorsement to be attached to the policy. There seems to us to be nothing contained in that letter which might lead the plaintiff into a false sense of security and form the basis of an estoppel. It seems rather to inform the assured of the agent's position in the matter and that it would require the indorsement provided for under the waiver clause of the policy, before it could be definitely said that the change had been agreed to.

Plaintiff seems to be relying to a great extent on the case of Gitz Sash Factory v. Union Insurance Society, 160 La. 381, 107 So.

232, 233. In that case however, the situation was like the one referred to by the Supreme Court in the People's Bank of Donaldsonville Case, supra, in regard to the cases relied on by the plaintiff there. The violation of the term of the policy urged by the insurer was concerning a matter that came up at the inception of the contract. It related to a chattel mortgage on the movables insured, when the policy itself provided for its avoidance if the subject of insurance be or become incumbered by a chattel mortgage. From the opinion, we quote the following: "It appears therefore that, notwithstanding its knowledge of the existence of the chattel mortgage on the property of plaintiff, defendant company did promise, through its duly authorized local agent, James A. Ross, to insure the property; that said company did actually issue the policy on same through its agent, and did accept the premium, notwithstanding the clause in the policy declaring such insurance to be void from its inception."

A difference in the facts in this case is observed at once, where it appears that the change in the condition of the policy came not only several weeks after it had been issued, but also after two indorsements had been regularly made and attached to it, and where also, it appears, all premiums had been paid before the change in condition, and none accepted after it was made, and where further it does not appear that there was any promise made by the agent, but a simple notice to the effect that he had notified the general agents of the company and was awaiting the indorsement to be attached under the very terms of the policy itself.

In the case of Shuff v. Life & Casualty Ins. Co., 164 La. 741, 114 So. 637, 640, the Supreme Court again had before it for consideration the question of a waiver of the terms of a policy by an agent and of its binding effect on the company. It seems to be the latest decision of that court on the subject, and we note that it quotes with approval and as authority the cases of People's Bank of Donaldsonville v. National Fire Insurance Co., and Dominick v. Detroit Fire & Marine Insurance Co., supra. Noteworthy, we deem it here, is the reference made to the case of Gitz Sash Factory v. Union Insurance Society, in the following language: "The plaintiff cites and relies upon the decision in Gitz Sash Factory v. Union Insurance Soc., 160 La. 381, 107 So. 232. The ruling in that case, by a majority of the members of the court, was founded, in some measure at least, upon the fact that the agent who wrote the policy was a general agent of the company, and upon the assumption, therefore, that he had authority to bind the company by a verbal waiver of a condition in the policy; hence it was held, in the majority opinion that, to absolve the company from liability for the acts of its general agent

would permit a fraud upon the rights of the insured. It is sufficient to say that the decision rendered in that case is not a precedent for our ruling in this case.

Neither, we may add, under the different state of facts, as we have endeavored to point out, is it authority in the case before us.

We are of the opinion that the judgment of the lower court is erroneous and that it should be reversed.

For the foregoing reasons, it is therefore ordered that the judgment appealed from be, and the same is hereby, set aside, avoided, and reversed, and it is further ordered that there be judgment in favor of the defendant and against the plaintiff, rejecting the latter's demands, at its costs in both courts.