<span>15   651<br>49  1372</span>

## F. W. Williams & Co. *v.* Cresent Mutual Insurance Company.

An American Consul at a forign port is without authority to make an authenticated copy of a draft drawn here by the owner of a ship, upon the consignees of such ship at such foreign port.

The interest of a consignee, who has accepted a draft drawn against the freight, whether insured or not, is an insurable interest and a distinct matter from the interest of the captain and ship owners. The latter may, however, afterwards benefit by an insurance effected by the former, by assenting to the contract and making himself liable for the premium ; but this is the result of a contract on his part.

Where the consignor of a vessel effected an insurance on the freight, with the warranty, " no other insurance " and the consignee, who had accepted a draft against such freight, without instructions from the consignor, effected another insurance on the freight at the place of destination—*Held :* That this last insurance could not be considered a violation of the warranty contained in the former.

APPEAL from the Sixth District Court of New Orleans, *Howell, J.*
*Whittaker & Fellowes,* for plaintiffs.   *M. M. Cohen,* for defendant and appellant.

Voorhies, J.   The only question presented, on the merits of this cause, is, whether the plaintiff's policy of insurance on the freight of the ship Lorena, has not been vitiated by the violation of the warranty that no other insurance should be effected on this property.

This clause is as follows : " freight valued at freight list, on condition no other insurance."

After the execution of the policy by the defendants, Captain Urquhart, part owner of the ship Lorena, drew a draft for 7,800 francs, to the order of *Charles Cavaroc,* upon *Gibert & Dalléas,* the consignees of the ship at Bordeaux.   The latter, having accepted this draft, had the freight insured for their own interest in an insurance company at Bordeaux.

The evidence in the record shows that this second insurance was not obtained through the instructions of the plaintiff, express or implied : but that the consignees had the same effected for their own interest, and without instructions from any party whatsoever.   They acted of their own accord; and, although they charge the premium to the plaintiffs, it is upon the supposition that, ac-

WILLIAMS *v.* CRESCENT INS. Co.

cording to the custom of merchants, the ship should be made liable for this amount.

The defendants contend that the insurance, at Bordeaux, was, in point of fact, made for the benefit of the ship; and that, in this connection, the District Judge committed an error in striking from the deposition of *Gibert & Dalléas*, the certified copy of the draft in question.

At the close of these depositions we find a copy of the draft, with the words in the margin: " Please have the same insured and charged to the ship. " And then follows a certificate by the consul that: " the above is a true copy of the original bill presented for examination by *Messrs. Gibert & Dalléas*, merchants in Bordeaux, said bill in their possession. "

The production of this draft was not called for, either in the interrogatories in chief or in the cross-interrogatories, although the evidence of the witnesses related to its contents. At all events the consul had no authority to make an authenticated copy of this document; and, if the defendants wished to avail themselves of its contents, including the marginal note, the proper mode was to offer in evidence the original, and make due proof of its execution.

*Gibert & Dalléas*, as consignees and acceptors, had an insurable interest in the freight of the Lorena; nor did it lie in the power of the plaintiffs to prevent these parties from effecting the insurance in Bordeaux. The interest of a consignee, who has accepted a draft drawn against the freight, whether insured or not, is a distinct matter from the interest of the captain and ship owner. It is true the latter may afterwards benefit by the operation by assenting to the contract and making themselves liable for the premium; (4 R. R. 234, 5 R. R. 423); but this is the result of a contract on their part. So the plaintiffs in this cause, by thus making themselves parties to the insurance effected at Bordeaux by their consignees, would have reaped the consequent advantages, at the same time that they would have had to support its burden. But they have been entirely passive in this matter; and the question is then presented whether an insurance, not effected by themselves nor by persons acting as their agents, can be considered as a violation of their warranty of " no other insurance. "

The doctrine is that a warranty must be literally complied with, otherwise it is fatal to the contract; but surely this cannot mean that a party, who has agreed not to insure his property for a second time, shall be responsible for the acts of those who, far from acting as his agent, act in a different capacity and for their own individual interests. The plaintiffs did not procure a second insurance; they had not stipulated that other parties, having distinct insurable interests, should not exercise this right. Consequently, the acts of the latter cannot be charged to the former. To hold the plaintiffs responsible for these acts, would be a departure as well from the letter as from the spirit of their contract, and, therefore, a perversion of the rule that the warranty in such cases must be literally observed.

Judgment affirmed.