162 So. 646

**FIDELITY & CASUALTY CO. OF NEW YORK v. ÆTNA HOMESTEAD ASS'N.**

Nos. 32892, 33113.

June 19, 1935.

Rehearing Denied July 12, 1935.

Porteous, Johnson & Humphrey, of New Orleans, for appellant.

Hugh M. Wilkinson, A. Miles Coe, Fred W. Oser, Harry Nowalsky, and George M. Leppert, all of New Orleans, for appellee.

HIGGINS, Justice.

These two cases involve the same issues and parties and were consolidated here and presented jointly for the purpose of decision.

Plaintiff, as surety on a building contract bond, sued the owner for damages alleged to have been sustained by it, in being compelled to pay certain lien claims of the defaulting contractor, due to the fact that the defendant is said to have paid the contractor the fourth installment and the fifth, or final installment, premature-

ly or contrary to the provisions of the building contract.

The defense is that the fourth installment was paid according to the terms of the contract and that the fifth installment was authorized by the general agents of the surety.

There was judgment in both cases in favor of the defendant, dismissing the suits, and plaintiff has appealed.

With reference to the time when the fourth payment should be made, the contract provided:

"Fourth payment of twenty-seven hundred ($2700.) dollars when building and all work is finished, delivered and accepted, said acceptance to be by the party of the first part and to be in writing. * * *

"Provided, That in each case of said payments, a certificate shall be obtained from said party of the first part, to the effect that the work done is in accordance with the drawings and specifications and that payments are properly due; *which certificate shall be the authority of the party of the first part* (owner or defendant herein) *to make such payments * * *.*" (Italics ours.)

■ The evidence shows that the architect issued his certificate to the defendant in accordance with the above provision, before the fourth payment was made, and that the building was accepted, in writing, on October 29, 1927, by the defendant, as owner, and the money thereafter paid to the contractor. We conclude, as did the trial judges, that the fourth payment was properly made.

■ It is conceded that the representatives of the surety company authorized, in writing, the payment of the final installment, but plaintiff contends that in doing so they acted beyond the scope of their authority, and therefore the surety is not bound by their act.

The record shows that R. M. Walmsley Insurance Agency, Inc., was general agent of the plaintiff in Louisiana and Mississippi for a number of years. The contract between them contained this provision:

"The General Agents shall appoint agents subject to the approval of the Company, throughout the said territory; solicit and canvass throughout the said territory personally and with agents and brokers for insurance in the said branches of the Company's business, *write and issue policies and renewals*; establish and diligently promote the Company's business throughout the said territory; faithfully observe, fulfill and perform the duties hereby imposed; etc." (Italics ours.)

John P. Golden, the representative of plaintiff's home office, was appointed under the following document:

"Know all men by these presents:

"That the Fidelity and Casualty Company of New York has made, constituted and appointed, and by these presents does make, constitute and appoint John P. Golden, of New Orleans, Louisiana, its true and lawful attorney for it and in its name,

place, and stead to execute on behalf of the said Company, as surety, bonds, undertakings and contracts of suretyship to be given to all obligees provided that the liability of the Company as surety on any bond or undertaking or contract of suretyship executed under this authority shall not exceed the sum of twenty five thousand dollars.

"In witness whereof, etc. (there follows the signatures, notarization, etc.)"

In a private letter, the surety informed Golden that he was to be guided by certain instructions to be found in a leaflet which bore the caption "General Power of Attorney."

It appears clear to us that both R. M. Walmsley Insurance Agency, Inc., and John P. Golden were acting as the general agents of the plaintiff in this territory.

The fifth section of the building contract provided that the final payment of $2,700 was not to be paid until thirty days after the written acceptance of the building had been recorded. This payment was made to the contractor on November 2, 1927, less than thirty days after the recordation of the acceptance, but was authorized in the following letter:

"The Fidelity and Casualty Company of New York
"R. M. Walmsley Insurance Agency, Inc.
"General Agency—Louisiana and Mississippi
"4th Floor Mason-Smith Bldg.
"318 Carondelet St.

"New Orleans, La., Oct. 31, 1927.
"Aetna Homestead Association
"Canal Bank Building
"New Orleans, La.
"Gentlemen:

"Mr. W. W. White, with whom you entered into contract for the erection of a dwelling on Octavia between Liberty and Howard Streets, has notified us that he desires you to pay him the final payment under the contract without waiting the usual thirty days after completion.

"After considering Mr. White's case, we have agreed and hereby authorize you to make the last payment and by doing so your interest under this bond will not be jeopardized in any way.

"Yours very truly,
"R. M. Walmsley Insurance Agency, Inc.,
"By J. P. Golden."

It thus appears that this payment was authorized in writing by both general agents.

It is said that the action of the plaintiff's representatives in writing the letter was not binding on it, because their authority was limited by the following provision of the contract of agency:

"Unless specifically authorized in writing by the company to do so, the General Agents shall not waive any forfeiture or alter or waive the terms, conditions, or statements of any policy or other contract or commit the Company to the payment of any loss, claim or demand whatsoever,

except as hereinafter authorized; nor shall the General Agents authorize or permit any of their sub-agents or any one subject to their authority to waive any forfeiture or alter or waive the terms, conditions, or statements of any policy or other contract or commit the Company to the payment of any loss, claim, or demand whatsoever."

In the case of Richard v. Springfield Fire & Marine Ins. Co., 114 La. 794, 38 So. 563, 565, 69 L. R. A. 278, 108 Am. St. Rep. 359, the general agent for a fire insurance company executed a waiver of the "iron safe clause," which was a part of the insurance contract. This court held that the waiver was binding upon the principal, because it was within the apparent scope of his authority. The court quoted with approval the following excerpts:

" 'An agent authorized to issue policies binds the company by all waivers, representations, or other acts within the scope of his business, unless the insured has notice of a limitation of his powers. The question always is not what power the agent did in fact possess, but what power the company held him out to the public as possessing.' May on Insurance (4th Ed.) § 126. * * *

" 'If a foreign company appoints A. and B. as local agents, and supplies them with blank policies signed by the company, and which they may fill up and countersign, they are its general agents. 127 Ill. 364, 20

N. E. 77, 11 Am. St. Rep. 121, Continental Insurance Co. v. Ruckman.' Id., note.

" 'That an insurance agent authorized to make contracts of insurance and issue policies may waive forfeitures, and reinstate and restore a void policy, is held by numerous cases.' Wood on Insurance, vol. 2, § 415."

In the Restatement of the Law of Agency, § 161, we find the rule expressed as follows:

"A general agent for a disclosed or partially disclosed principal subjects his principal to liability for acts done on his account which usually accompany or are incidental to transactions which he is authorized to conduct, although they are forbidden by the principal, the other party reasonably believes that the agent is authorized to do them and has no notice that he is not so authorized."

See, also, Gitz Sash Factory v. Union Ins. Society, 160 La. 381, 107 So. 232; Couch's Cyclopedia of Insurance Law, vol. 2, § 530b; article 3000, Rev. Civ. Code.

It is our opinion that the general agents of plaintiff acted within the apparent scope of their authority in executing the waiver, and therefore their principal is legally bound.

For the reasons assigned, the judgments appealed from are affirmed at appellant's costs.